IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM CALDWELL HANCOCK, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil No. 3:07-0639 |
| ) | Judge Trauger |
| SUSAN R. LIMOR and ) | |
| RICHARD F. CLIPPARD, ) | |
| ) | |
| Appellees. ) | |

## **MEMORANDUM and ORDER**

On this appeal from a decision of the United States Bankruptcy Court for the Middle District of Tennessee, Wm. Caldwell Hancock, attorney for a Chapter 11 debtor in that court, argues that the Bankruptcy Court abused its discretion under Sixth Circuit standards by granting the Chapter 7 and U.S. Trustees' objection to Hancock's receiving any fees applied for under 11 U.S.C. § 330 for his willful failure to comply with the disclosure required under 11 U.S.C. §§ 327 and 329 and Federal Rules of Bankruptcy Procedure 2014 and 2016. (Docket Entry No. 4).[1]

---

[1] The proceedings below involved both filings in the bankruptcy case and in a related adversary proceeding, as further described below. Those records are listed in this court as Docket Entries Nos. 1 & 2. Docket Entry No. 1 contains items filed in the bankruptcy case; Docket Entry No. 2 contains items filed in the related adversary proceeding (hereinafter "D.E. No. X"). Therefore, citation to a single Designation of Record is not possible. Items contained solely within those two records will be cited as either Designation of Record 1 for items in the bankruptcy case or Designation of Record 2 for items in the related adversary proceeding ("hereinafter "D.R 1 No. X or D.R. 2 No. X"). Where clarity would be better served, citation to items not otherwise contained in the Designation of Record, will be cited with reference to the Bankruptcy Court's Memorandum Opinion (hereinafter "D.R. 2 No. 19, p. X). Where necessary because citation to neither Designations of Record nor the Opinion is available, citation will be to either the Bankruptcy Docket (hereinafter "B.R. X") or the Adversary Proceeding Docket (hereinafter "A.R. X").

1

In a March 7, 2007 Memorandum and Order, the Bankruptcy Court held that Hancock, by submitting "shifting disclosures," had failed to meet the standards set by the Sixth Circuit for full disclosure regarding fees for attorneys for the debtor and ordered turnover of the retainer funds held by Hancock by granting the summary judgment motion of the Trustee.[2] (Designation of Record 2 Nos. 19 & 20).

For the reasons discussed herein, the March 7, 2007, decision of the Bankruptcy Court to deny all fees to Hancock will be affirmed. Hancock further appeals, conditioned upon this court's reversing the denial of fees, from an order of the Bankruptcy Court directing turnover to the trustee of the retainer fund held by Hancock. (D.E. No. 4. p. 17). Because the court affirms the denial of all fees, the Bankruptcy Court's order of turnover of the retainer against Hancock will not be disturbed on review, as Hancock concedes would be the case. *Id*.

BACKGROUND

On February 10, 2004, Innovative Entertainment Concepts, Inc., ("debtor") filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Middle District of

---

[2] Hancock sought by motion to have the Bankruptcy Court vacate, alter or amend the decision. D.R. 1 Nos. 17 & 18. After a hearing, the Bankruptcy Court denied to grant any of the relief Hancock requested. D.R. 2 No. 24. Despite the inclusion of items related to those proceedings in the Designation of Record to this Court, Hancock's Brief does not present that latter denial by the Bankruptcy Court for review. Therefore, in view of the determination of this court to affirm the decision below, the court need not consider whether to review the denial of the motion to alter or amend. *McCalvin v. Yukins*, 444 F.3d 713, 723 (6th Cir. 2006) ("It is well established that issues not raised by an appellant in its opening brief, or issues 'adverted to in a perfunctory manner [without] some effort at developed argumentation,' are deemed waived. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir.2006). Some of our decisions go so far as to suggest that waived arguments are 'not reviewable' by this court; *e.g. Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir.2004); *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir.1998); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir.1991); while elsewhere we suggest that this court has the option of considering or ignoring the waived arguments as we see fit; *e.g., Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir.1989)).

Tennessee. D.R. 1 No. 1. Filed with the petition was the disclosure of compensation required by 11 U.S.C. § 329 (a) and Federal Rule of Bankruptcy Procedure 2016(b), stating that debtor had retained Hancock and that debtor was the source of a retainer fund paid to Hancock.[3] D.R. 2 No. 19, p. 2. On April 27, 2004, Hancock filed an application for approval as debtor's attorney, reciting the same retainer terms as contained in the petition; on June 10, 2004, the application was approved. *Id*. On August 13, 2004, the case converted to Chapter 7 on the motion of the United States Trustee; Susan Limor was appointed Chapter 7 trustee ("Trustee").[4] *Id*. At that point, Hancock had not yet drawn on the retainer. *Id*.

On November 11, 2005, the Trustee commenced an adversary proceeding against Hancock, demanding turnover of the prepetition retainer. *Id*. Although it is the decision in the adversary proceeding that is appealed here, as will be seen, parallel proceedings in the bankruptcy case will also be considered by the court in its review. As the Bankruptcy Court stated, Hancock's filings related to his retention and related fee arrangement are governed by § 329 and Rule 2016(b).[5] *Id*. at 8. As the Bankruptcy Court further stated, the "disclosures" in question are derived from two parallel tracks: applications filed in the bankruptcy case and

---

[3] The amount of the retainer is not at issue on this appeal.

[4] The proceedings below that have led to this appeal were commenced by the Chapter 7 trustee. However, the Appellee is the United States Trustee for this region. D.E. No. 9. The Chapter 7 trustee has joined in the U.S.T.'s brief without further statement. D.E. No. 14.

[5] Section 330(a)(1) provides that the court's fee award is subject to 11 U.S.C. § 329. Under § 329(a), an attorney representing a debtor in a bankruptcy case has a statutory obligation to file a statement with the court disclosing all compensation paid and its source during the year preceding the commencement of the case. 11 U.S.C. § 329(A). Federal Rule of Bankruptcy Procedure 2016(b) implements § 329(a). Fed. R. Bankr. P. 2016(b). The rule requires "[e]very attorney for a debtor, whether or not the attorney applies for compensation," to file the "statement required by § 329(a) of the Code. *Id*.

3

filings in the adversary proceeding. *Id*. at 3.

As noted above, a statement disclosing compensation filed with the petition was filed in the bankruptcy case. Also filed in the bankruptcy case was Hancock's Final Application for Compensation on May 20, 2006, and Amended Disclosure to Application of Wm. Caldwell Hancock for Allowance of Final Compensation on November 14, 2006. D.R. 1 Nos. 5 & 14.

The docket in the Trustee's adversary proceeding reflects entries for filings by Hancock in response. Those filings are Hancock's Answer and Pretrial Statement, D.R. 2 Nos. 5 & 6.; Motion to Set Aside Judgment, D.R. 2 No. 10[6]; Opposition to Motion for Summary Judgment, D.R. 2 No. 15; Defendant's Verified Motion for Summary Judgment, D.R. 2 No. 16. The filing dates for the foregoing are: March 10, 2006, (pretrial statement); July 3, 2006 (motion to set aside); October 9, 2006 (opposition to trustee's motion for summary judgment)[7]; December 8, 2006 (Hancock's motion for summary judgment).

A.

1.

The Bankruptcy Court treated Hancock's filings in the main bankruptcy case and the adversary proceeding as a unified record of disclosures. D.R. 2 No. 19, p. 9. The Bankruptcy Court held that the initial disclosures regarding the retainer arrangement were binding upon Hancock. *Id*. Therefore, when Hancock filed his Final Application, which recited different

---

[6] Note that a Motion to Alter or Amend or Set Aside Order Denying Final Fee Application of Debtor's Counsel was filed in the bankruptcy case also on July 3, 2006, containing a similar, but not identical recitations. D.R. 1 No. 9.

[7] The court notes that the same motion was filed in the bankruptcy case on September 19, 2006, D.R. 1 No. 13.

terms for the retainer arrangement as stated below, the Bankruptcy Court found that the version in the Final Application was either at best a self-serving response to the Trustee's turnover complaint or an admission that the initial disclosure was not correct. *Id*. However, Hancock failed to appear at the hearing on his Final Application, which was therefore denied based on the trustee's objection. D.R. 2 No. 9.

The Bankruptcy Court determined that Hancock compounded the offending "shifting" with his Motions to Set Aside Judgment and to Alter or Amend or Set Aside Order Denying Final Fee Application of Debtor's Counsel. D.R. 2 No. 19, p. 4. However, the Bankruptcy Court, despite the position of the Trustee and U.S. Trustee that Hancock's shifting disclosures to that point warranted denial of all fees, determined to grant Hancock's motions and scheduled another hearing. D.R. 2 No. 13.[8]

The Bankruptcy Court found that Hancock added a final piece to the record of "shifting" by filing, prior to the re-hearing, the Amended Disclosure to Application of Wm. Caldwell Hancock for Allowance of Final Compensation on November 14, 2006. D.R. 2 No. 19, p.5.

2.

The Bankruptcy Court found that what Hancock had initially disclosed in the petition and application to employ regarding the retainer arrangement was that the source of the retainer was the debtor.[9] (February 10, 2004 (petition), April 27, 2004 (application to employ). D.R. 2 No.

---

[8] The Memorandum Opinion contains an inconsistency with regard to the date this relief was granted. D.R. 2 No. 13 was entered on September 8, 2006 (note B.R. No. 63 & A.R. No. 35).

[9] There was no dispute below that the retainer was in the amount of $10,000 and was accurately disclosed in that regard.

5

19, pp. 1 - 2. (citing B.R. 1, 13). Hancock next averred, in his pretrial statement, that the debtor funded the retainer from the proceeds of a loan. D.R. 2 No. 19, p. 2. Hancock next disclosed, in his Final Application, that the debtor did not have sufficient funds for the retainer and that debtor's principal arranged with the principal's mother to place a $10,000 retainer fund in trust with Hancock for the benefit of the debtor. *Id*. at 3.

Hancock next argued by motion, filed in both the adversary proceeding and in the bankruptcy case, that the retainer came into the hands of Hancock from the debtor and that the mother of the debtor's principal provided the retainer, thereby retaining a full property interest in the retainer fund. D.R. 2 No. 19, p. 4 (*see* B.R. 49 & A.R. 26). Next, Hancock filed his Amended Disclosure to Application of Wm. Caldwell Hancock for Allowance of Final Compensation, as discussed below. D.R. 2 No. 19, p. 5. Finally, on December 8, 2006, Hancock filed his Motion for Summary Judgment in both the main bankruptcy case and in the adversary proceeding, *conceding* that the retainer was the property of the estate. D.R. 1 No. 15; D.R. 2 No. 16.

3.

Hancock's Brief states that the purpose of the Amended Disclosure was to "[a]ttempt [] to summarize the conflicting reports . . ." he had received regarding the retainer. D.E. 4, p. 8. The Amended Disclosure contains the most detailed presentation in the record, by either Hancock or Appellee, purporting to explain the pre-petition events surrounding the debtor's retention of Hancock and the attendant retainer arrangement, and the Bankruptcy Court quoted at length from this filing. D.R. 2 No. 19, pp. 5 - 7. (While the Bankruptcy Court has quoted extensively from this document, it should be noted that this document is only in the docket of the

6

bankruptcy case and not in the docket of the adversary proceeding.)

The Amended Disclosure states that Hancock and Mark Seifert, the debtor's principal, first met one year prior to the filing of the petition, but that initial meeting did not result in an engagement. D.R. 1 No. 14, ¶ 1. Ten months later, Hancock and Mark Seifert met a second time to discuss legal representation, but again, no engagement resulted. *Id*. ¶¶ 2 - 4. However, the second discussions indicated that the debtor corporation did not have, and did not expect to have, funds to pay a retainer to Hancock. *Id*. ¶ 2. This second meeting included the discussion of an arrangement whereby Mark Seifert's mother would be the source of funds for the retainer. *Id*. ¶ 3. The Amended Disclosure states that Hancock telephoned Mark Seifert's mother to "[c]onfirm this arrangement and understanding." *Id*. A third, and ultimately last, pre-petition meeting occurred between Hancock and Mark Seifert. The Amended Disclosure does not state a date for this meeting, but it can be reasonably inferred to have occurred close to the time of the filing of the petition. *Id*. ¶¶ 5, 6. Mark Seifert on behalf of the debtor retained Hancock pursuant to this third meeting. *Id*.

As to the retainer arrangements that resulted from this third meeting, the Amended Disclosure states:

> Either on the date of filing or one day prior thereto, Mr. Seifert called to request depository account information so that he could expedite deposit of the retainer into applicant's trust account. Shortly thereafter the bank called to confirm that Mr. Seifert had caused a $10,000.00 deposit to be made into the trust account. The Applicant had received nothing from Mr. Seifert or Mrs. Seifert to confirm the arrangements that Mr. Seifert had made of the source of the retainer.

*Id*. ¶ 7.

The Opinion includes the above quoted text. D.R. 2 No. 19, pp. 5 - 6. The Opinion does

7

not refer to paragraphs 10 and 11, quoted below, which are also important.

> 10. Almost two years later, in late 2005, the Chapter 7 trustee wrote the undersigned asking for turnover of the retainer, claiming that it was property in which the estate had an interest. This created a need to definitively determine the ownership of the funds as among the potential claimants.
> 11. Recalling the conversation with Mrs. Seifert and the inability of Mr. Seifert in 2004 to provide definitive and concrete confirmation, the undersigned contracted (sic) Mr. Seifert in late 2005. This time, Mr. Seifert "thought he remembered" that his mother had provided the retainer. He could not remember whether he had run it through the corporation or not before it was deposited in the trust account. The undersigned was unable to contact Mrs. Seifert to get her view, to attempt to sort out the issue, make sure that Rules of Professional Conduct were honored and, if necessary to interplead the retainer.

D.R. 1 No. 14, ¶¶ 10 & 11. The Amended Disclosure further states that it was the results of Hancock's late 2005 contact with Mr. Seifert that informed and prompted Hancock's filing of the Final Application. *Id.* ¶ 12.

In Hancock's Brief, he argues that the timing of the Final Application was the result of Seifert's initiating a conversation with Hancock when the Trustee filed an adversary proceeding naming Seifert. D.E. 4; pp. 6 - 7. Hancock's Brief states that that conversation prompted him to discuss the events surrounding the retainer with Seifert. *Id.* Hancock's Brief avers that what Seifert communicated at that time was perceived by Hancock to be "new information," which Hancock then placed in the context of his earlier, pre-petition dealings with the debtor's principal and his ultimate retention to represent the debtor. D.E. 4; p. 7. That "new information" then informed and prompted his Final Application. *Id.*

Hancock's Brief states that the above conversation with Seifert occurred sometime after March 10, 2006, the date Hancock filed his Answer in the adversary proceeding, and before May 20, 2006, the date Hancock filed his Final Application. D.E. 4; pp. 6 - 7. Hancock's Brief describes that contact as the first communication between the two to occur in "that year." D.E.

8

4; p. 7.[10]

4.

The record does not show that the Trustee presented any extrinsic evidence from the § 341 meeting or from an examination of the debtor's principal or any other person regarding the circumstances surrounding, or the particulars of, Hancock's fee arrangement with Innovative. The Trustee's attack is based on failure to disclose source. The court further notes that the record does not indicate that the proceedings below included an examination of Hancock as a witness, only his appearances as an attorney.

It is apparent to the court that Hancock's filings, as noted above, pose the following questions regarding the ultimate source of the retainer and the terms of the fee arrangement:

First, if it were proven that the retainer was supplied to Hancock by the debtor's principal's mother, and then further proven that she was a creditor of the debtor, then such an arrangement could place Hancock in a conflict of interest with the bankruptcy estate and cast doubt on the quality of his initial § 329 and Rule 2016(b) disclosures. *See* §§ 327(a) & (c), 101(14). As the Bankruptcy Court correctly stated, no proof was presented demonstrating that the debtor's principal's mother was a creditor of the estate. D.R. 2 No. 19, p. 7. However, as discussed below, the lack of this person's creditor status is a question separate from whether such a person would have influence on the debtor's attorney.

Next is the question of whether some party other than the debtor was the source of the

---

[10] Although Hancock's Brief and Amended Disclosure differ as to the timing of the discussions between Hancock and Seifert that Hancock claims prompted his filing of the Final Application - late 2005 in the Amended Disclosure, early 2006 in Hancock's Brief - and as to who initiated the contact - Hancock in the Amended Disclosure, Seifert in Hancock's Brief - the court finds the discrepancy of no significance to its review.

9

retainer. Hancock's filings in both the adversary proceeding and the main bankruptcy case indicate his own confusion as to whether the debtor's principal or the mother of the debtor's principal was the source of the retainer. D.R. 2, No. 19, p. 5, quoting B.R. No. 74, ¶ 3. Other than the quotation of this portion of the Amended Disclosure, there is no finding of fact by the Bankruptcy Court on the question of the source of the funds.

Next is the related question of whether the funds for the retainer were from the proceeds of a loan to the debtor, and, if that were the case, whether or not the loan was made by the debtor's principal or another party, including the mother of the debtor's principal. D.R. 2, No. 19, p. 6 quoting B.R. No. 74, ¶¶ 8-9. Again, other than the quotation of this portion of the Amended Disclosure, there is no finding of fact in the Opinion on whether retainer funds were provided to the debtor by loan.

A further related question is whether Hancock held the retainer in trust for the benefit of the provider of the funds. D.R. 2, No. 19, p. 4, A.R. No. 26, ¶ 7. Prior to the rescheduled hearing, Hancock conceded that "[t]he retainer is most likely property of the estate." D.R. 2, No. 19, p. 6 quoting B.R. No. 74, ¶ 13. Other than the quotation of this portion of the Amended Disclosure, there is no finding of fact in the Opinion as to whether the retainer was held in trust by Hancock for the benefit of some party other than the debtor.

Confronting all of the foregoing, the Bankruptcy Court concluded that Hancock could not have contended, at the time he filed his Rule 2016(b) statement, that the debtor had sufficient funds for the retainer and, therefore, that Hancock must have known there was of necessity a source for the retainer other than the debtor. D.R. 2, No. 19, p. 10. Consequently, the Bankruptcy Court found that Hancock's subsequent "shifting disclosures" made clear that

10

Hancock by choice had not accurately disclosed the source of the retainer, or least the extent of his knowledge of the source, in his initial § 329 and Rule 2016(b) filings and thereby violated Sixth Circuit precedent regarding disclosure of fee arrangements. *Id*. at 8 (citing *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714 (6th Cir. 2001) ("*Kisseberth*") and *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996) ("*Downs*").

B.

STANDARD OF REVIEW

This court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a). The district court, acting as an appellate court, "reviews a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and its legal conclusions, which are subject to de novo review on appeal, are correct." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988). Sanctions imposed by a bankruptcy court "should not be disturbed unless a clear abuse of discretion is found." *Mapother & Mapother, P.S.C. v. Cooper ( In re Downs)*, 103 F.3d 472, 478 (6th Cir.1996) (internal citations omitted).

C.

ANALYSIS

An attorney's obligations under the Bankruptcy Code, including those under the disclosure requirements for attorneys seeking employment and compensation in connection with a bankruptcy case, "[a]re fundamentally rooted in the fiduciary relationship between attorneys and the courts." *Downs*, 103 F.3d at 479. "[A]n attorney for a debtor-in-possession is an officer of the court and as such, unquestionably has a duty to be perfectly candid regarding his fitness to perform his duties." *In re Coastal Equities, Inc.*, 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984).

11

Because the bankruptcy court must determine whether the attorney holds any interest adverse to the estate, the attorney has the duty to disclose all connections with the debtor, creditors and any other party in interest, not just those whom the attorney selects as consequential. *Id*. at 308 (*citing In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir. 1979); *In re Arlans Dept. Stores, Inc.*, 615 F.2d 925, 932 (2d Cir. 1979)). Further, the Bankruptcy Code does not permit a court to "[a]pprove the employment of a person who is not disinterested, even if the person does not have an adverse interest." *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723, 725 (6th Cir. 1991).

A person's failure to disclose information the lack of which interferes with the court's ability to make an informed decision as to whether the employment of the person or the related fee arrangement complies with the Bankruptcy Code and Rules is subject to sanction. *In re Crimson Investments, N.V.*, 109 B.R. 397, 401 (Bankr. D. Ariz. 1989). A bankruptcy court has the authority to sanction attorneys and may exercise its discretion is so doing. *Kisseberth* ,273 F.3d at 721; *Downs*, 103 F.3d at 477.

"If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril." *In re Coastal Equities, Inc*., 39 B.R. at 308 . (*citing In re Rogers-Pyatt Shellac Co*., 51 F.2d 988, 991 (2d Cir.1931); *In re Haldeman Pipe & Supply Co*., *supra*, 417 F.2d at 1304)). Any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment. *Kisseberth*, 273 F.3d at 719 (*quoting In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989) (*quotation marks omitted*). Upon review and where a failure to candidly disclose is found, a court has a sound basis to deny all fees or order full disgorgement. *Downs*, 103 F.3d at 478

12

(collecting cases from various districts concerning an attorney's failure to disclose his fee arrangement under 11 U.S.C. § 329 & Fed. R. Bankr. P 2016(b)). While a bankruptcy court's powers are to be used within the confines of the Code, *In re Middleton Arms, L.P.*, 934 F.2d at 724 (quotation and citations omitted), the necessary enforcement of the Code is not served when form is allowed to obscure substance, *Pepper v. Litton*, 308 U.S. 295, 305 (1939).

Thus, Hancock's conduct presents the dual question of whether he fulfilled the duty he owed the Bankruptcy Court of candidly and fully disclosing the particulars regarding his retention and whether any failure in this duty was more than merely technical. The Bankruptcy Court found that Hancock's "shifting disclosures" were the antithesis of candor and completeness and that his actions were willfully self-serving.

1.

As the Bankruptcy Court noted, both the disclosure of compensation required by § 329 and Rule 2016(b) and an application to employ debtor's counsel as required by § 327 and Rule 2014(a), were filed in debtor's case, and both were signed by Hancock. As noted above, none of what Hancock presented in his Amended Disclosure, which amended his only fee application pursuant to §330 and which was filed two years after his retention, did he present in either of his earlier § 327 or § 329 filings regarding his retention and fee arrangement.

Hancock avers that he chose to make a conservative initial disclosure. D.R. 1, No. 14, ¶ 8. Hancock argues in his brief that he complied with the requirement to disclose the payor and the source from which he would directly receive payment for his services. D.E. No. 4, pp. 12 - 14. He further argues that his subsequent presentations to the Bankruptcy Court were comprised of information that came to his attention subsequent to his initial disclosures, so that none of his

13

conduct could be viewed as in willful disregard of his obligations to the court. *Id*. This argument does not square with paragraph 8 of the Amended Disclosure, which clearly states that Hancock exercised his own judgment in not disclosing to the Bankruptcy Court all of the facts and circumstances regarding his retention by the debtor, facts of which he was aware at the time of his initial § 329 and Rule 2016(b) statement. Consequently, in view of Hancock's own statements, his conduct cannot be considered as anything but willful.

Hancock's conduct cannot be viewed as candid in the circumstances, where Hancock was aware that the debtor's principal had considered arrangements for the retainer fund to be provided by a family member, arrangements where those funds were to be available to the debtor by loan, either directly or channeled through the debtor's principal, and where Hancock could not definitively state that such arrangements had been rejected by the debtor's principal at the time that he filed his initial disclosure.

Therefore, its is evident to this court that the Bankruptcy Court's factual findings are not clearly erroneous, given that those findings are directly supported by Hancock's own statements.

2.

It is clear under the Code and precedent that whether or not such facts were to be scrutinized was a matter for the Bankruptcy Court to determine. *Kisseberth*, 273 F.3d at 719; *Downs*, 103 F.3d at 477 - 478. Consequently, Hancock's selectivity regarding what to present in his initial disclosure deprived the Bankruptcy Court of the benefit of what a "perfectly candid" attorney would present in similar circumstances. *In re Coastal Equities, Inc*., 39 B.R. at 308, *supra.* Further, Hancock's initial conduct spawned a series of proceedings before the Bankruptcy Court that required the considerable expenditure of that court's resources without

14

providing yet a clear picture of the fee arrangement. *Kisseberth*, 273 F.3d at 722 (candid and faithful compliance with § 329 and Rule 2016(b) required to avoid "fragmented proceedings").

The Bankruptcy Court characterized this conduct as presenting "shifting disclosures," where candor was required. The attorney's forthright and timely disclosure of the complete facts surrounding his ultimate retention is important for the bankruptcy court when approving the retention of a debtor's attorney or related fees. *Downs,* 103 F.3d at 477 (citing with approval *In re Arlan's Dept. Stores, Inc*., 615 F.2d 925, 932 (2d Cir. 1979)). In *Downs* the Sixth Circuit agreed that it was clear to the bankruptcy court from the attorney's § 329 and Rule 2016(b) statements, which were filed only after the bankruptcy court had so ordered, that the actual state of affairs surrounding the retainer agreement or the source of the retainer presented a potential conflict of interest, which the attorney had not timely disclosed, despite appearing in the case in representation of the debtors and receiving several advances from a source other than the debtors. *Downs,* 103 F.3d at 477.

What Hancock's Amended Disclosure and Brief make clear is that, at the time Hancock filed his §329 and Rule 2016(b) statement, he had first-hand knowledge of (because he was a participant in) the deliberations of the debtor's principals and related parties regarding the alternatives for funding the retainer and a Chapter 11 filing generally. Further, it was Hancock's admitted election not to disclose the details of his pre-petition dealings with the debtor and debtor's principals regarding a Chapter 11 filing and his retention, but rather to selectively disclose what he deemed to be the "most conservative" view of the retainer and fee arrangement. As did the attorney in *Downs*, Hancock deprived the Bankruptcy Court of its well established power to supervise the debtor's Chapter 11 case. *Kisseberth*, 273 F.3d at 721, *Downs*, 103 F.3d

15

at 477.

In *Kisseberth* the Sixth Circuit held that the bankruptcy court correctly found that the attorney willfully failed to disclose that he had received funds in addition to his retainer and that he willfully did not report, as required by Rule 2106(b), when he both diverted settlement proceeds to pay his fees and received subsequent payments from the debtors. *Kisseberth*, 273 F.3d at 717 - 718. The attorney did not dispute both that he had received funds in the manner stated by the bankruptcy court and that he did not make any disclosures regarding the same; he instead argued that his omissions were technical and inadvertent. *Id*. at 720. The bankruptcy court and the district court agreed that the attorney had an affirmative duty to disclose, which he "[a]lmost totally disregarded." *Id*. at 721. The Sixth Circuit affirmed the denial of fees, relying on *In re Park-Helena Corp*., 63 F.2d 877, 882 (9th Cir. 1995). *Id*.

In *Park-Helena* the attorney was found to have willfully failed to make the proper disclosures regarding fees when he did not disclose that his retainer was funded by a principal of the debtor. 63 F.2d at 879, 882. There, the Ninth Circuit stated that, while even negligent or inadvertent disclosure failures could result in a denial of fees, there was no doubt that the failure there was willful. 63 F.2d at 882 (citing *In re Maui 14K*, 133 B.R. 657, 660 (Bankr. D.Haw, 1991); *In re Coastal Equities, Inc.*, 39 B.R. at 308).

It is not necessary here to examine whether the Bankruptcy Court should have expressly determined where Hancock's admitted disclosure failures fell between egregiously willful and inadvertent. The Bankruptcy Court accurately observed that Hancock's conduct was beyond a mere technical breach and so fell below the duty owed the court. *In re McCrary & Dunlap Const. Co. LLC*, 79 Fed.Appx. 770, 779 - 780 (6th Cir. 2003) (unpublished) (not abuse of

16

discretion to deny all fees where failure to disclose due to mere negligence while technical breaches are to be treated more leniently).

The information not timely disclosed raised the issue of a third party's involvement in funding the debtor's legal costs. *In re Metropolitan Environmental, Inc.*, 293 B.R. 871, 883 (Bankr. N.D. Ohio 2003) (explaining that bankruptcy court has the sanctioning powers authorized in *Downs* when not convinced that attorney representing debtor in possession is free from divided loyalties). The Bankruptcy Court viewed the timing of the shifting explanations as opportunistic responses to challenges from the Trustee and U.S. Trustee, and not candid, timely disclosures. 293 B.R. at 890 (required information supplied long after due and offered not voluntarily but in response to demand). The Bankruptcy Court further held that, had Hancock timely provided those explanations, such information would have provoked an objection from the Trustee or the U.S. Trustee to his retention, triggering an examination of his retention by that court. D.R. 2 No. 19, p. 10. After-the-fact disclosures, even without the taint of such opportunism, do not equal compliance. *In re McCrary & Dunlap Const. Co. LLC*, 79 Fed.Appx. at 780. (when examining disclosure compliance, inquiry is focused on the time such disclosure was due).

Therefore, there was no error in the Bankruptcy Court's application of the Code, Rules and precedent. For the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED** in all respects.

It is so **ORDERED**.

Enter this 18th day of December 2007.

_____
ALETA A. TRAUGER
United States District Judge